UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-11195-GAO

DONALD WHITE,
Petitioner,

v.

THOMAS DICKHAUT,
Respondent.

OPINION AND ORDER
March 21, 2011

O'TOOLE, D.J.

On June 27, 2007, the petitioner, Donald White, filed a self-prepared petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was later amended after counsel was appointed for White. The sole claim in White's amended petition is that his due process rights were violated when he was denied access to post-conviction discovery that he contends would have shown whether a fingerprint identification used against him at trial was part of an ongoing pattern of police misconduct and gross incompetence requiring a new trial.

The respondents have moved for summary judgment, which White has opposed.[1]

## I. Background

On October 9, 1995, a stolen Buick LeSabre, traveling at seventy-two miles per hour, collided with another vehicle carrying two passengers, killing them both. The driver of the Buick fled the scene. A tracking dog which arrived approximately thirty minutes later picked up a scent inside the Buick and followed it several hundred yards toward the Franklin Hill Housing

---

[1] As a preliminary matter, White argues that the motion is untimely under Federal Rule of Civil Procedure 56. At the March 22, 2010 status conference, the respondent discussed filing a summary judgment motion, and the Court set a deadline of April 30, 2010. The respondent timely filed its motion on April 29, 2010.

Development, where White lived with his mother. Police officers spoke with White later that evening at the housing development, but did not question him about the accident and did not notice anything unusual about his appearance.

On October 11, detectives returned to the housing development to speak with White. When White saw them, he blurted out one sentence after another, noting that he knew why the officers were there, that he was not involved in the car accident, and that he only stole Cadillacs. He held out his hands for the officers to examine. They did not observe any visible injuries.

Upon investigation of the Buick that same day, detectives found small amounts of blood on the speedometer, the dashboard, and the steering column. Testing of blood samples revealed that the blood from the speedometer area was type B human blood and blood on the dashboard contained human protein.[2]

On October 13, Boston Police Officer Dennis LeBlanc, a fingerprint expert, examined the Buick for fingerprints. He lifted partial fingerprints from the steering column and the gear shift, and partial palm prints from the driver's side door. Only one fingerprint had sufficient ridge detail to permit comparison. The next day, LeBlanc returned with his poly light, which had been under repair the previous day, and found a latent print on the steering wheel. He had the steering wheel removed from the car and transported to the latent print room, where he compared it to White's inked print and determined that they matched at twelve points of comparison. The print contained water spots, which presumably were made when the fire department hosed down the car at the scene. Boston Police Officer Rosemary McLaughlin confirmed the match.

On October 14, officers arrested White, and his trial commenced a little over a year later. At trial, White argued, among other things, that the fingerprint linked to him had been planted by the police. An expert testifying on his behalf, David LaMagna, claimed that a latent fingerprint

---

[2] There was not enough blood found on the dashboard to perform typing.

would dissolve upon contact with water, and that because the Buick had been hosed down, some of the prints could not be used for comparison purposes due to a loss of ridge detail. On cross-examination, he admitted that the water spots would not completely destroy the ridge detail. An expert for the Commonwealth, Charles Walsh, testified that water would bead up on top of the fingerprint if the print contained oil and that it would not be possible to transfer a fingerprint from one surface to another in its original condition without it resulting in an incomplete and reversed print. On November 29, the jury convicted White of two counts of manslaughter, receiving a stolen motor vehicle, operating a motor vehicle recklessly or negligently, and leaving the scene of an accident with property damage.

On June 11, 2003, after appeal and a series of resentencings,[3] White moved for a new trial, arguing that there was a jury instruction error and that he was denied his due process right to an impartial judge. On June 7, 2004, he filed a supplemental motion for new trial and provided newspaper articles about LeBlanc and McLaughlin. The articles detailed an erroneous fingerprint identification made by LeBlanc and McLaughlin in 1997 which resulted in the wrongful conviction of Stephen Cowans. The Commonwealth had convened a grand jury to investigate the two officers, but it declined to return indictments against them.

That same month, the Commonwealth filed a notice of discovery as to the fingerprint-related evidence. It set forth the facts of the mistaken fingerprint identification in the Cowans case and indicated that the Commonwealth agreed to provide White with copies of the original fingerprint reports arising out of the Cowans case in 1997, reexaminations made in 2004, and copies of the trial testimony of LeBlanc and McLaughlin. On June 24, the Commonwealth also

---

[3] The convictions were affirmed on direct appeal on February 29, 2000, but the case was remanded for resentencing. On April 27, 2000, the Supreme Judicial Court denied further appellate review. On September 22, 2000, White was resentenced. On March 14, 2002, the SJC vacated the sentences and remanded for another resentencing. On September 23, 2002, on the second remand, he was resentenced for the second time.

gave White a DNA report indicating that he was the probable source of DNA extracted from blood samples collected from the Buick.

White filed several motions for additional discovery, seeking information relating to any state investigation into wrongdoing by LeBlanc or McLaughlin, permission to issue a summons for the grand jury evidence against the two officers, a motion for funds for an expert to examine DNA test results, and a motion for funds for his fingerprint expert. With the exception of the motion for funds for the DNA expert, his motions for discovery were denied.

On March 5, 2005, his motion for a new trial based on new evidence was denied on the basis that a mistake by an expert witness in one case is not ordinarily admissible in another case and that White failed to show that LeBlanc or McLaughlin had engaged in a pattern of fraudulent activity with respect to fingerprint identification. The judge, however, allowed a request by White for funds for an expert to examine the crime laboratory's DNA results. On April 6, 2005, it allowed a motion by White to temporarily vacate the March order denying the motion for a new trial pending the DNA examination. White's expert, Donald Riley, examined the DNA evidence and results, and on November 17, White filed another motion for a new trial or to have all scientific evidence independently evaluated. The motion was based on Riley's conclusion that the storage conditions of the blood led to possible contamination. On December 12, a judge denied the motions, finding that Riley's affidavit was speculative and contradicted by the Commonwealth.

On appeal, the Massachusetts Appeals Court affirmed the denial of the motion for new trial and discovery motions, finding that a mistake by an expert witness in an unrelated case would not ordinarily be admissible in another case and that its exclusion did not prejudice the petitioner. On March 29, 2007, the Supreme Judicial Court denied further appellate review.

**II.    Discussion**

Federal Rule of Civil Procedure 56 is generally held applicable to habeas proceedings based on Rule 11 of the Rules Governing Section 2254 Cases. Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000); McBride v. Sharpe, 25 F.3d 962, 969 (11th Cir. 1994). Thus, summary judgment is appropriate if there is no genuine dispute as to material facts and the respondent is entitled to judgment as a matter of law.

A. Issues of Fact

In the context of habeas review, a state court's determination of a factual issue is presumed correct. 28 U.S.C. § 2254(e)(1); Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal habeas court credits the state court's findings of fact unless the petitioner can carry this burden. Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002). The presumption of correctness "overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." Torres v. Thaler, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) (quoting Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by* Tennard v. Dretke, 542 U.S. 274 (2004)).

The material facts are generally uncontested. White, however, attempts to demonstrate that it is disputed whether LeBlanc and McLaughlin were engaged in a broad pattern of fraudulent activity with respect to fingerprints. He concedes that this state court fact determination is entitled to a rebuttable presumption of correctness, but argues that he has rebutted the presumption (or, at least, has compiled sufficient evidence to entitle him to an evidentiary hearing so as to overcome it). He relies primarily on the lone problems in the Cowans case, but also relies now on new information from a report by Ron Smith and Associates in March 2004, which describes LeBlanc's use of a penned script on back of the latent print identification chart when testifying in the Cowans case, verification forms found in

5

McLaughlin's drawer that were pre-signed by McLaughlin, beliefs by some that it was not a simple mistake, and a theorized dependence on the Automated Fingerprint Identification System. White also relies on several new newspaper articles detailing purported forged fingerprint cards with which a supervisor came forward to try to explain LeBlanc's error, LeBlanc's alcohol-related problems, the reputation of the BPD Identification Unit, and the revamping of the Latent Print Unit.

White has failed to rebut the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). During White's trial, his expert, LaMagna, suggested that the officers planted White's fingerprint, but the Commonwealth's expert, Walsh, contradicted the theory. The jury apparently rejected the theory as well when it convicted White. As to the Cowans case, an error by LeBlanc and McLaughlin in one case does not by itself suggest a pattern of negligent or fraudulent behavior. Additionally, while a grand jury was convened, it ultimately decided not to issue an indictment against the officers, suggesting that there was insufficient probable cause to believe that Leblanc and McLaughlin had been involved in an egregious pattern of misconduct.

### B. Respondent Is Entitled to Judgment As a Matter of Law

Title 28 U.S.C. § 2254(d) sets out that:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state-court decision is 'contrary to' clearly established Federal law if the state court arrives at a conclusion opposite from that reached by the U.S. Supreme Court on a question of

law" or if it "decides the case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts." Foxworth v. St. Amand, 570 F.3d 414, 424 (1st Cir. 2009) (internal quotations omitted).

An "unreasonable application" of clearly established federal law occurs when the state court correctly identifies the governing legal principles, but "(i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Id. at 425 (internal quotations omitted).

White argues that the Appeals Court's upholding of the denial of the defendant's motions for post-trial discovery was an unreasonable application of established law as set forth in Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. In Brady, the Supreme Court established that the failure to disclose exculpatory information, if material to either guilt or punishment, may constitute a violation of a criminal defendant's due process rights. Id. at 87. Such evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

While a defendant has the right to exculpatory evidence during the criminal proceedings against him, "the Supreme Court has explicitly rejected Brady's applicability to postconviction proceedings." Tevlin v. Spencer, 621 F.3d 59, 70 (1st Cir. 2010); see also Donald v. Spencer, 685 F. Supp. 2d 250, 257 (D. Mass. 2010). A criminal defendant who has been "proved guilty after a fair trial does not have the same liberty interests as a free man." Dist. Att'y's Off. v. Osborne, --- U.S. ---, 129 S. Ct. 2308, 2320 (2009). At that stage,

> [t]he State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. "[W]hen a State chooses to offer help to those seeking relief from convictions," due process does not "dictat[e] the exact form such assistance must assume." Pennsylvania v. Finley, 481 U.S. 551, 559 (1987). [A defendant's] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief.

Id. The appropriate question in the post-conviction context then is "whether Massachusetts postconviction discovery procedures are 'fundamentally inadequate to vindicate the substantive rights provided.'" Tevlin, 621 F.3d at 70 (quoting Osborne, 129 S. Ct. at 2320).

Post-conviction procedures in the Commonwealth are outlined in Massachusetts Rule of Criminal Procedure 30. Rule 30 provides that judges may authorize discovery post-conviction where the moving party can establish a *prima facie* case for relief through, at least, affidavit evidence. "'In requesting such discovery, the defendant must make a sufficient showing that the discovery is reasonably likely to uncover evidence that might warrant granting a new trial.'" Tevlin, 621 F.3d at 70 (quoting Commonwealth v. Daniels, 837 N.E.2d 683, 696 (Mass. 2005)). In this context, a defendant would have to "make specific, not speculative or conclusory, allegations that the newly discovered evidence would have materially aid[ed] the defense against the pending charges" and that it "could yield evidence that might have played an important role in the jury's deliberations and conclusions, even though it is not certain that the evidence would have produced a verdict of not guilty." Id. at 70-71 (internal quotations omitted). In other words, the newly discovered evidence must "cast[] real doubt on the justice of the conviction." Donald, 685 F. Supp. 2d at 257.

White has made no such showing. For one, it does not appear that White included an affidavit with his motion for permission to issue a summons for grand jury evidence. (See Supp. Answer 71 (dkt. no. 17).) But, even if one were to consider what "evidence" he argues he presented to the state court through his discovery motions, (see Mem. in Supp. of Pet'r's Pet. for

Habeas Corpus Relief & Related Disc. Mots. 30-32 (dkt. no. 58)), White failed to set forth sufficient facts as to how the information would have materially aided his defense, particularly in light of the other evidence presented against him at trial and his unsuccessful argument at trial that his fingerprint was planted by the police. See Tevlin, 621 F.3d at 71. A lone example of one mistaken fingerprint case, especially when the grand jury declined to issue an indictment at the conclusion of an investigation against the officers, is not enough. His requests for discovery—then and now—amount to nothing more than a fishing expedition. White has therefore failed under Osborne to demonstrate that the state courts applied its post-conviction discovery procedures in a way that was fundamentally inadequate.[4]

Even if Brady did offer the appropriate framework, the Appeals Court decision was not an unreasonable application of clearly established federal law. In order to succeed on a Brady claim, the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Moreno-Morales v. United States, 334 F.3d 140, 146 (1st Cir. 2003) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). In this context, a defendant is prejudiced only if there is a "'reasonable probability of a different result'" had the evidence been disclosed. Banks v. Dretke, 540 U.S. 668, 691 (2004) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). The "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434.

---

[4] The First Circuit has previously held that the Massachusetts post-conviction discovery procedures are not on their face unconstitutional. Id.; see also Donald, 685 F. Supp. 2d at 257 (finding that the Massachusetts criminal rules regarding post-conviction discovery are not fundamentally inadequate).

The Appeals Court, though it did not cite any federal case law on point, asked and answered the question that is dispositive under the Brady analysis in this case: whether the denial prejudiced White.[5] The Appeals Court found that the denial of White's motions for post-trial discovery did not create any discernible prejudice to him, citing LaMagna's accusation at trial that the police planted the fingerprint, which was contradicted by a government witness and apparently rejected by the jury. In finding that there was no discernible prejudice to White, the Appeals Court concluded—correctly—that there was no reasonable probability that the result of the proceeding would have been different if the trial court had granted his discovery requests and/or had the evidence been disclosed. As the Appeals Court noted, the fingerprint identification was not the only evidence admitted against him that was probative of his guilt. Blood found on the Buick's speedometer matched White's blood type, a tracking dog followed a scent from the Buick toward the housing development where White lived, and his behavior when the police approached him two days after the accident indicated a consciousness of guilt.[6] White also offered testimony at trial that the police planted the fingerprint, a theory apparently rejected by the jury.

Consequently, there is insufficient support for the conclusion that the requested evidence, even if it were favorable to White, reasonably could have "'put the whole case in such a different light as to undermine confidence in the verdict.'" See Strickler, 527 U.S. at 290 (quoting Kyles,

---

[5] The Appeals Court did not cite particular authority—either federal or state—in its analysis. It is presumable that it applied Rule 30(c) of the Massachusetts Rules of Criminal Procedure, which sets forth the requirements for post-conviction relief. "The Massachusetts '*prima facie*' case standard derived from [Rule 30(c)(4)] . . . requires essentially the same showing as the Bagley formulation, namely a demonstration evidence is likely to result in 'relief,' i.e. a different result." Tague v. Ficco, No. 02-11382-DPW, 2003 WL 21805110, at *5 (D. Mass. Aug. 6, 2003).

[6] While not necessary for the purposes of this decision, it is noteworthy that subsequent DNA testing on the blood samples collected from the Buick indicated that White was the probable source of the DNA. Moreover, the Ron Smith report reveals that a technical review of 134 identifications by LeBlanc which had been categorized as suspect in an independent examination did not reveal any erroneous identifications.

514 U.S. at 435). White has not shown that the Appeals Court's decision was "so offensive to existing precedent or so lacking in foundation that its conclusion is outside the universe of plausible, credible outcomes," see Bui v. DiPaolo, 170 F.3d 232, 243 (1st Cir. 1999) (internal quotations omitted), and the respondent is entitled to judgment as a matter of law.

### III. Conclusion

For the foregoing reasons, the respondent's Motion for Summary Judgment (dkt. no. 70) is GRANTED. White's petition for a writ of habeas corpus is DENIED.

Because White has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue. Judgment shall be entered in favor of the respondent.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge